IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 5, 2014

**LACEY JONES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 03-02148      W. Otis Higgs, Jr., Judge**

**No. W2013-00483-CCA-R3-PC  -  Filed April 15, 2014**

A Shelby County jury convicted the Petitioner, Lacey Jones, of four counts of especially aggravated kidnapping, one count of aggravated burglary, and two counts of aggravated robbery. The trial court merged the aggravated robbery convictions into the convictions for especially aggravated kidnapping and ordered the Petitioner to serve an effective sentence of forty-two years. The Petitioner appealed, and this Court affirmed the judgments of the trial court. *State v. Lacey Jones*, No. W2004-01628-CCA-R3-CD, 2005 WL 1848476, at *6 (Tenn. Crim. App., at Jackson, Aug. 4, 2005), *perm. app. denied* (Tenn. Dec. 19, 2005). The Petitioner filed a petition for post-conviction relief, in which he alleged that his trial counsel was ineffective. The post-conviction court dismissed the petition after a hearing. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Lacey Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Amy P. Weirich, District Attorney General; David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

1

## I. Facts
## A. Trial

This case arises from a home invasion robbery at the residence of the victims, Anthony and Trina Boyce. A Shelby County grand jury indicted the Petitioner for multiple offenses related to this robbery. On direct appeal, this Court summarized the underlying facts of the case as follows:

At approximately 3:30 a.m. on October 16, 2002, while Anthony Boyce was away on business, four masked men, who were armed with guns and wearing dark clothing, used a crowbar to break in the front door of the residence and announced that they were the police. Although Ms. Boyce had locked herself in her bedroom with two of her young children, ages three and five, the intruders kicked in the bedroom door. When one of them shouted, "[B]* *ch, where's your husband . . . [w]e going to kill your . . . f* *king husband," Ms. Boyce recognized the voice as that of a co-defendant, Bobby Harris, who had grown up with her husband. After handcuffing Ms. Boyce and ordering her to lie on her bed, the men ransacked the house. One of the assailants, who remained in the bedroom, placed his hands inside Ms. Boyce's underwear and penetrated her vagina with his fingers. While downstairs, the intruders located and handcuffed two of Ms. Boyce's teenage sons and her adult brother. The third son, upon hearing the forced entry, had fled to a neighbor's residence and telephoned the police. When the police arrived, they found the [Petitioner], who was dressed in black and had an injured ankle, lying in a neighbor's yard. He told the officers that he had been considering a purchase of the house next door when he was overtaken by the men running from the Boyce residence. The [Petitioner] was soaking wet. There were footprints leading from the lake behind the residence to where he was found by the police. Ms. Boyce's checkbook, driver's license, and billfold contents were on the ground some two feet away.

*Jones*, 2005 WL 1848476, at *1. The jury convicted the Petitioner of four counts of especially aggravated kidnapping, one count of aggravated burglary, and two counts of aggravated robbery. The trial court merged the aggravated robbery convictions into the convictions for especially aggravated kidnapping and ordered a concurrent sentence of thirty-five years for each of the four counts. The trial court ordered the aggravated burglary sentence of seven years to be served consecutively, for an effective sentence of forty-two years. *Jones*, 2005 WL 1848476, at *1.

### B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel on multiple grounds. The post-conviction court held an evidentiary hearing, where the parties presented the following evidence: Officer Jeffrey Jordan testified that he worked for the Memphis Police Department and that he investigated the home invasion in this matter. He was one of the first officers at the scene of the crime, and he conducted the "preliminary" investigation. He testified that, when he and his partner arrived at the scene, they saw a Chevy van parked in the driveway of the home with its motor running. Officer Jordan recalled that they turned off the vehicle and began checking the sides and backyard of the home. He testified that there was a covered pool in the back yard upon which two handguns were found. Officer Jordan testified that there was a lake in the back yard with a dock. When Officer Jordan checked the dock, he found wet footprints on it. Officer Jordan then saw "one of the suspects laying on the ground," whom he later identified as the Petitioner. A "couple of feet" from where the Petitioner was lying, Officer Jordan found a checkbook and a photo identification for one of the victims.

On cross-examination, Officer Jordan testified that the Petitioner told him repeatedly that he was in the home's backyard because he was interested in buying the house next door. The Petitioner also told him that when he saw a group of masked men run out of the victims' home, he got "all scared" and took off and jumped over the fence and hurt his leg.

The Petitioner testified that he was represented in this matter by Leslie Ballin in General Sessions Court during preliminary proceedings. The Petitioner testified that he later retained his trial counsel ("Counsel") to represent him at trial. The Petitioner recalled that he hired Counsel in the summer of 2003 and went to trial on this matter in March 2004. The Petitioner stated that he met with Counsel several times before October 2003 when the judge set a trial date. The Petitioner first met with Counsel in "lockup" where they discussed the case. The Petitioner informed Counsel that he understood the biggest challenge relative to his case would be the testimony of the police officers who responded to the scene.

The Petitioner testified that, after his trial date was set in October 2003, he did not see Counsel again until three days before his trial. The Petitioner testified he sent letters to Counsel because he "couldn't get in touch with him." The Petitioner stated:

> I was calling but I couldn't get through. And I could never – every time I'd call no one would answer the phone or they would say [Counsel] was out of the office. And so I was trying to figure out what was going on. But I couldn't get a response, so I sent a letter to the Board of Professional Responsibility. And I requested at that time where he can respond back to me, trying to get the preliminary hearing transcripts and other things I was looking for.

The Petitioner said that he got a response back from the Board of Professional Responsibility but that there was no communication between he and Counsel. The Petitioner testified that he then received three letters from Counsel, dated November 25, December 5, and December 31, 2003. The letters were entered into the record as exhibits. The Petitioner testified that he then met with Counsel three days before trial, in March 2004.

The Petitioner testified that, when he met with Counsel before trial, the Petitioner wanted to know why Counsel had not communicated with him by telephone, particularly because the Petitioner had already paid him. The Petitioner reiterated that, in the six months between when his trial date was set and the actual trial, he and Counsel only "really had a chance to sit back and talk" three days before trial, as far as discussing where witnesses were located and how to get them to court. The Petitioner stated that, on the day of trial, he asked the trial court to appoint a new attorney to his case. The Petitioner recalled that he made "a statement on the record" about the lack of communication between Counsel and himself.

The Petitioner stated that he had wanted to call two witnesses at trial, Mr. Boyce and the Petitioner's girlfriend, Ms. Brown. The Petitioner stated that he asked Counsel to file a motion to suppress the police officers' statements, but Counsel did not do so. The Petitioner also requested that an investigator be employed to work on the case, but Counsel did not do so until the week prior to the trial.

The Petitioner stated that, at trial, Counsel did not throughly cross-examine the police officers about the discrepancies in their statements and testimony. The Petitioner said that his lack of communication with Counsel hampered the Petitioner's ability to prepare for his trial.

On cross-examination, the Petitioner agreed that he told the trial court that he did not want to testify and that he was satisfied with Counsel's representation.

Counsel testified that he had been an attorney since 1983 and had practiced criminal and civil law, including personal injury and divorce cases. He testified that he had tried approximately twelve to fifteen criminal cases since 1989. Counsel stated that he met with the Petitioner, who told him that he had been at the scene of the crime looking at real estate next door when a group of men ran out of the victims' house and injured the Petitioner. Counsel testified that the Petitioner told him that Ms. Brown would corroborate his story. Counsel testified that he paid an investigator two different times to try and locate Ms. Brown, and, when she could not be found, Counsel requested a continuance and a new trial date until she could be located. Counsel stated that the trial court told him that "he would make sure we got [Ms. Brown] in there if we needed her[,]" meaning the trial court would subpoena her, so Counsel stopped looking for her.

4

Counsel testified that he did visit the Petitioner during the period of time when it was alleged they had no communication. He stated that the Petitioner called him about seeking a continuance in order to find the witness. Counsel stated he was "pretty sure" that he went and saw the Petitioner in jail, but he could not remember for certain because it had all happened nine years prior. Counsel testified that the letters he sent to the Petitioner saying that all communication needed to be in writing "didn't mean" that Counsel was not going to visit the Petitioner but simply meant that Counsel wanted a record of what he communicated to the Petitioner because of the Petitioner's complaint to the Board of Professional Responsibility about Counsel's representation. Counsel stated that he was not sure whether there was a long period of time when he did not see the Petitioner. Counsel also stated he did not remember the Petitioner's asking him to subpoena Mr. Boyce to testify. Counsel testified that he went to the house where the crime occurred and took pictures.

Counsel testified that the Petitioner only gave him Ms. Brown's name and no other information about how to find her. He recalled that, when the trial judge indicated he could find Ms. Brown himself, the Petitioner communicated to Counsel not to continue looking for her because she was married.

On cross-examination, Counsel testified that the Petitioner maintained he had not committed the crime, but he also stated that he would take a "twelve year offer" from the State. Counsel testified that he made contact with the Petitioner at least eight to twelve times and that he "thought they met enough." Counsel testified that, during that time, the Petitioner told him his own theory of defense, which was that Ms. Brown had taken him to look at the house next door to the crime scene "for some reason[.]" Counsel recalled that he was able to elicit the Petitioner's defense theory through the police officers' testimony. Counsel also stated that one police officer had made a statement that he did not recognize the Petitioner. Counsel testified that, for those reasons, he did not file a motion to suppress the officers' statements.

Counsel testified that he discussed the Petitioner's decision to testify with him, and he told the Petitioner that a hearing would be held about the admissibility of his prior history of similar crimes. He said the Petitioner decided not to testify. He also stated that everything the Petitioner would have testified to was brought up in police officers' testimony and that, as a result, he did not think the Petitioner should testify. Counsel testified that, in terms of investigation, he did "everything [he] could." He stated that the State had a very strong case because the Petitioner was found at the scene.

5

Based upon this testimony, the post-conviction court denied post-conviction relief.[1] It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition because Counsel's representation fell outside the standard proscribed in *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). He contends that Counsel did not conduct a "reasonable investigation" into the facts of his case and failed to communicate with the Petitioner about a trial strategy. The Petitioner contends that Counsel's failure to investigate the case lead to insufficient cross-examination of the police officers about the inconsistencies in their testimony. The State responds that the Petitioner has not shown in what ways Counsel's investigation was unreasonable and that the Petitioner has failed to demonstrate how such deficiency prejudiced him at trial. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

---

[1]The post-convictions court's order addressed multiple arguments laid out by the Petitioner in his petition; on appeal, the Petitioner assigns error only to Counsel's alleged failure to investigate the case and alleged lack of communication with the Petitioner. Thus, we will only address those portions of the order.

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

7

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In its order denying the Petitioner relief on this issue, the post-conviction court found that Counsel's investigation was not unreasonable, noting that Counsel had made "serious" efforts to find the potential witness, Ms. Brown, and that, with no more information than her name, "little more could be expected of [Counsel] in locating a witness." Further, the post-conviction court found that Counsel sufficiently communicated with the Petitioner throughout the period before his trial and that Counsel's reasons for not communicating by telephone were legitimate, given that the Petitioner had filed an ethics claim against him.

The evidence in this case does not preponderate against the post-conviction court's findings on this matter. We agree that Counsel was not deficient in his attempt to locate Ms. Brown. Counsel tried to find the witness Ms. Brown on two different occasions, even hiring a private investigator to try and locate her. The Petitioner, however, had only provided her name, and, thus, she could not be located. Further, the Petitioner did not present Ms. Brown as a witness at the post-conviction hearing. This is required for him to show Counsel's representation prejudiced him, as "this is the only way the [P]etitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the [P]etitioner." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

We conclude that Counsel adequately investigated the Petitioner's case. Counsel did "everything" he could, in light of the weight of the evidence against the Petitioner. A police officer who responded to the scene testified that he found the Petitioner lying on the ground outside the victim's house, with the victim's belongings on the ground a few feet away. The Petitioner's explanation to police officers that he was looking at nearby real estate was not plausible. Counsel further investigated this case by going to the victims' house and taking pictures of the surrounding area.

We further agree with the post-conviction court that Counsel adequately communicated with the Petitioner. While Counsel had trouble recalling the events nine years prior, he was "pretty sure" that he visited the Petitioner in jail. Counsel communicated with the Petitioner via written letter, which he found necessary based upon the Petitioner's

complaints, but the two also met in person.

The Petitioner has not shown by clear and convincing evidence that Counsel failed to look for the witness, that Counsel's investigation was insufficient, or that his communication with Petitioner was inadequate to constitute representation that falls below the standard of reasonableness. Accordingly, we do not conclude that Counsel's representation fell below an objective standard of reasonableness. Thus, the Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

9